**SOUTHERN ILLINOIS STONE COMPANY, a corporation, Plaintiff,**

v.

**The UNIVERSAL ENGINEERING CORPORATION, and Machinery, Inc., Defendants.**

**No. 75-791C(B).**

United States District Court, E. D. Missouri, E. D.

Feb. 3, 1978.

---

Lehman Finch, Cape Girardeau, Mo., for plaintiff.

Forrest M. Hemker, St. Louis, Mo., for Universal.

Tyree C. Derrick, St. Louis, Mo., for Machinery, Inc.

## MEMORANDUM AND ORDER

REGAN, District Judge.

By this diversity action Southern Illinois Stone Company (hereinafter Stone Company) seeks to recover substantial damages based on alleged breaches of express and implied warranties in connection with its purchase of new machinery and equipment from Machinery, Inc. (Machinery) and Universal Engineering Corporation (Universal) for use in its new rock crushing plant in Illinois. Defendants have counterclaimed for the unpaid balances of the purchase prices. The Uniform Commercial Code (which has been adopted in Illinois) is applicable.

Prior to the execution of the purchase orders, representatives of Stone Company had a number of discussions with representatives of Machinery and Universal respecting the construction of the proposed plant which was to replace Stone Company's existing but smaller rock crushing plant. Universal agreed to design and engineer the new plant. Some of the components were to be purchased from Universal and some from Machinery. In addition, some of Stone Company's existing equipment then being used in its smaller plant was also to be utilized. The culmination of the negotiations was the execution of two separate (but interrelated) purchase orders, one with each defendant.

The actual construction work was to be done by Stone Company, although Universal was to and did provide supervision and advice. From time to time there were delays in the shipment of component parts of the plant. On occasions it became necessary for Stone Company to incur costs for labor to correct some of Universal's shop errors (for example, mismatched bolts) and to purchase a number of bolts, nuts and washers, which should have (but did not) come with the equipment when delivered. Defendants do not dispute the foregoing facts and concede that plaintiff is entitled to credit for such costs and expenditures.

The first issue is whether, as alleged by plaintiff, defendants warranted that the plant as designed and engineered by Universal and built by Stone Company and using the equipment and machinery sold by defendants would produce an average of 1000 tons of crushed stone per hour on a sustained, continuing basis. Defendants contend that they warranted only that the plant would have a capacity of 1,000 tons

per hour. The evidence shows that in order to achieve a *production* of 1,000 tons of crushed rock per hour it would be necessary for the plant to have a *capacity* to produce between 1,200 to 1,400 tons per hour.

To establish the alleged warranty of production Stone Company offered parol testimony which was taken subject to defendants' objections that plaintiff was seeking to vary the written agreements. In arriving at our decision we have taken into consideration the parol evidence on this issue but find it unnecessary to rule defendants' objections thereto.

We have concluded, in light of all the facts and circumstances in the case, that plaintiff was fully informed and knew in advance of the execution of the purchase agreements that the actual production capabilities of the plant as designed by Universal with the equipment to be installed therein would be less than its warranted capacity. We find that as the result of the discussions between the parties it was agreed, on the basis of Universal's recommendation, that a 5165 Impact Crusher with a rated capacity of 750 tons per hour would be installed, with the understanding that with a grizzly feeder to be used in conjunction with the Impact Crusher the total *capacity* of the plant would be at least 1,000 tons per hour.

■ We find as a fact on the basis of the evidence as a whole that what defendants warranted was simply that the plant as designed and engineered by Universal with the equipment and machinery contracted to be installed therein would have a capacity to produce up to 1,000 tons of rock per hour, not that the plant would or could produce such amount of crushed rock on a continuing, sustained basis under any operating conditions. Plaintiff could not have been misled inasmuch as it knew that a rock crushing plant cannot possibly operate at its rated capacity on a continuous basis, and that capacity is merely the maximum production capability of the equipment that can be handled at any given period of time and under the most favorable operating conditions.

The next issue is whether the plant as designed and engineered by Universal accorded with good engineering design and practice, whether there were defects in the component parts sold by defendants, and whether defendants breached their warranty of capacity.

■ The construction of the plant was substantially completed by plaintiff on August 3, 1972. On August 19, 1972 one of the legs on the conveyer system buckled, as a result of which it became necessary to reinforce the legs during a four day plant shutdown. The cause of the buckling was undoubtedly too much pressure from rock in the surge pile. We find that defendants should have either designed the legs to withstand the stress of the rock or notified plaintiff in advance that it was necessary to backfill before building the surge pile. Accordingly, we find that defendant Universal is liable for the cost of reinforcing the legs. We do not award any additional sum for loss of production during the four days, taking into account both the absence of proof of damage resulting therefrom as well as plaintiff's repeated assertions that "in our claim we have disregarded the first four weeks of operation up to September 1, 1972 to allow for a normal shake-down period."

There is a sharp conflict in the evidence concerning the other alleged deficiencies in the design of the plant and the adequacy of its component parts. There is no question but that Stone Company was caused to shut down the plant on a number of occasions and that at least many of the shutdowns were necessitated by the breaking or replacement of parts of the equipment or by subsequent modifications of the plant. Where the parties differ is with respect to the casual relationship between any alleged breaches of warranty and the shutdowns.

■ With respect to the allegedly improper design of the plant, the major contentions of Stone Company relate to the rock box, the primary conveyer system, and the Impact Crusher. There is evidence supportive of plaintiff's claim that the rock box

both as originally designed and as later modified was of improper size as being too narrow and too short to accommodate the 50 ton trucks which Universal was aware were intended to be used by Stone Company. However, we find against Stone Company on this claim and hold that the greater weight of the credible evidence supports our finding that the rock box was properly designed and in accord with the agreement of the parties. We also find that the primary conveyer system was properly designed and adequate for the purposes for which it was designed and engineered.

We consider next plaintiff's contention that the 5165 Impact Crusher, together with the grizzly feeder, did not have the capacity to produce 1,000 tons per hour of crushed rock. Defendants do not seriously controvert the fact that more than the normal number of breakdowns of the plant occurred during the period the 5165 Impact Crusher was used. Stone Company constantly complained to Universal respecting its operating problems. Finally, in April, 1973, Universal agreed to (and did) substitute a larger (6185) Impact Crusher for the 5165 at no additional cost except for the cost to Stone Company of the labor for installation. The list price of the 6185 Impact Crusher was some $24,000 more than that of the 5165, and its rated capacity was 1,200 to 1,400 tons per hour.

As for the grizzly feeder, it is intended to operate on a vertical axis, so that if installed in an inclined position the result is a breakage of springs in the grizzly feeder. Such breakage not only diminishes the production but can (and did on occasions) cause a complete breakdown until the situation is alleviated. As originally installed, the springs were not vertical, but after a series of breakages this problem was corrected.

■ As noted supra, the rated capacity of the 5165 Impact Crusher was no more than 750 tons per hour. Defendants represented and warranted to plaintiff that the grizzly feeder would make a larger impact crusher unnecessary to achieve a capacity of 1,000 tons per hour. However, defendants should have been aware that even if the grizzly feeder was installed properly, there was little, if any, likelihood that under the existing conditions the plant could consistently produce the volume of crushed stone to be expected of a plant with a capacity of 1,000 tons per hour.

We find that the plant, as originally designed with the 5165 Impact Crusher, did not have a 1,000 ton per hour capacity as that term is understood in the industry and that it was inadequate for the purpose intended. We further find that the breakdowns during the period in which that impact crusher was in use directly resulted from defendants' breach of warranty of capacity. However, after the 6185 Impact Crusher was installed, the capacity of the plant fully complied with the warranty.

■ Nevertheless, even after the capacity of the plant was enlarged, shutdowns continued. With respect thereto the burden was upon Stone Company to prove by the preponderance of the evidence that they were due either to deficiencies in the design of the plant or defects in the equipment.

■ There is evidence of improper maintenance on the part of Stone Company which may have contributed to some breakdowns. So, too, in direct violation of Universal's written instructions, Stone Company persisted in dynamiting in the crusher when blockages occurred. We are not convinced that plaintiff proved that its own fault in the foregoing respects did not contribute to some extent to the excessive breakdowns. On the other hand, we do not believe that defendants should be exonerated of all liability simply because of plaintiff's contributory fault in some instances.

In this connection, we have not overlooked the fact that Universal acceded to a number of Stone Company's requests to make modifications in the plant, even when Universal was aware that no substantial improvement could be anticipated. We do not fault defendants for these attempts to "satisfy" their customer (as their witnesses explained), although we have no doubt that defendants were aware that in some instances modifications in design were essen-

tial to conform to good engineering practices.

That Stone Company is entitled to substantial damages is evident under our view of the facts. However, in assessing the damages, the problem is complicated by the fact that in large part the damages are claimed on the basis of the alleged breach of warranty of *production* (as to which we have found against plaintiff). Thus, plaintiff is not entitled to recover the cost of replacing or modifying various items of equipment to assure a production of 1,000 tons of crushed stone per hour or for other losses during the time the plant would be out of operation for such modifications. We also reject as too speculative plaintiff's claim for profits based on sales allegedly lost by reason of insufficient production.

The major item of the damage claim pertains to allegedly excessive production costs during the twenty-month period from September 1, 1972 through April 30, 1974. As of the latter date, the various modifications agreed to by Universal had been completed. For the purpose of this item, plaintiff has compared its unit cost per ton of production during the twenty month period with the unit cost per ton of production during the next twelve months. Such a comparison is unfair, if for no other reason that that the longer period includes two winters when production is admittedly smaller as well as a number of variables. It also takes no account of any contributory fault on the part of plaintiff for some of the shutdowns. In addition, a substantial portion of the plant modifications which necessitated a two month shutdown were not required by any deficiency of design or defect of equipment sold by defendants. So, too, some of the alleged overhead costs included in plaintiff's computations were improper for purposes of determining damages. Variables such as weather and market conditions, as well as whether plaintiff's sales prices were kept in line with increased costs for labor and supplies are not sufficiently given consideration by plaintiff.

It is true, of course, that damages need not be proved with mathematical certainty. On the other hand, the evidence must be such as to enable the trier of the fact to make a reasonable determination without speculation and conjecture as to the extent to which the defendants are liable.

Bearing in mind that by reason of defendants' initial breach of warranty of capacity and the defects in some of the equipment sold to it, Stone Company was undoubtedly hampered in the production of crushed stone, we have no doubt that it was caused to incur some excessive production costs. Taking all factors into consideration, we believe that a reasonable estimate for this item of damages is the sum of $300,000.

Admittedly, plaintiff is also entitled to recover the sum of $1,115.60 which it expended for various items, such as bolts, nuts and washers, and for 282 hours of labor costs incurred to correct defendants' shop errors. Other items of labor costs to which plaintiff is entitled are for work during shutdowns for which defendants are responsible, for example, in reinforcing the conveyor legs and in repairing and replacing equipment due to the improper original design. We find that the sum of $10,000 is a fair figure for labor costs.

The total damages we have found is in the sum of $311,115.60. On their counterclaims, defendant Universal is entitled to recover the $87,073.69 and defendant Machinery is entitled to recover $45,730.00, the amounts of which are not controverted. These items aggregate the sum of $132,-803.69 which should be offset against the award to plaintiff. The net judgment to plaintiff is $178,311.91. Judgment will be entered accordingly.

The foregoing memorandum constitutes our findings of fact and conclusions of law.